UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

|                                   |   |                                      |
|-----------------------------------|---|--------------------------------------|
| RONALD FREDERICK CREIGHTON,       | ) |                                      |
|                                   | ) |                                      |
| Plaintiff,                        | ) | Case No. 1:12-cv-1127                |
|                                   | ) |                                      |
| v.                                | ) | Honorable Robert Holmes Bell         |
|                                   | ) |                                      |
| COMMISSIONER OF                   | ) |                                      |
| SOCIAL SECURITY,                  | ) |                                      |
|                                   | ) | **REPORT AND RECOMMENDATION**        |
| Defendant.                        | ) |                                      |
|                                   | ) |                                      |

This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to disability insurance benefits (DIB) and supplemental security income (SSI) benefits. On October 14, 2009, plaintiff filed his applications for benefits alleging an April 15, 2007 onset of disability. (A.R. 124-35.) He later amended his claims to allege a June 1, 2009 onset of disability.[1] (A.R. 66, 68, 97, 153.) His claims were denied on initial review. (A.R. 103-10.) On February 24, 2011, he received a hearing before an administrative law judge (ALJ), at which he was represented by counsel. (A.R. 56-98.) On March 11, 2011, the ALJ issued his decision finding that plaintiff was not disabled. (A.R. 14-25.) On August 20, 2012, the Appeals Council denied review (A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

---

[1]SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed. Thus, November 2009 is plaintiff's earliest possible entitlement to SSI benefits.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision. Plaintiff argues that the ALJ's decision should be overturned on the following grounds:

1.  The ALJ committed reversible error by not properly considering the opinion of plaintiff's treating physician and improperly discrediting a report from a psychologist procured by plaintiff's attorney;

2.  The ALJ committed reversible error in finding that plaintiff did not meet the requirements of listing 12.05(C) and by failing to find that plaintiff had a significant mental impairment; and

3.  The ALJ committed reversible error in failing to follow the vocational expert's answers to accurate hypothetical questions.

(Plf. Brief at 15, docket # 14). I recommend that the Commissioner's decision be affirmed.

## Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833

(6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013)("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## Discussion

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from June 1, 2009, through the date of the ALJ's decision. (A.R. 16). Plaintiff had not engaged in substantial gainful activity on and after June 1, 2009. (A.R. 16). The ALJ found that plaintiff had the following severe impairments: myalgia of the back, neck, shoulders, wrists, knees, and ankles, migraine headaches, obesity, and borderline intellectual functioning. (A.R. 16). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements

of the listing of impairments. (A.R. 17). The ALJ found that plaintiff retained the following residual

functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can perform no more than occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs, but can never climb ladders, ropes, or scaffolds. The claimant can use his left upper extremity to perform no more than occasional pushing, pulling, pinching, and gripping. Furthermore, the claimant can perform no more than occasional flexion and extension of his left upper extremity at the elbow, and cannot engage in extreme wrist positioning with his left upper extremity. The claimant cannot use vibratory tools for more than thirty minutes during an eight-hour workday, and cannot perform constant high force gripping. Finally, the claimant is limited to performing unskilled work.

(A.R. 19). The ALJ found that plaintiff's testimony regarding his subjective limitations was not fully

credible. (A.R. 19-23). Plaintiff was unable to perform any past relevant work. (A.R. 23). He was

41-years-old as of the date of the ALJ's decision. Thus, he was classified as a younger individual

at all times relevant to his claims for DIB and SSI benefits. (A.R. 23). Plaintiff has at least a high

school education and is able to communicate in English. (A.R. 23). The transferability of work

skills was not material to a disability determination. (A.R. 24). The ALJ then turned to the

testimony of a vocational expert (VE). In response to a hypothetical question posed by the ALJ, the

VE testified that there were approximately 13,000 jobs in Michigan that the hypothetical person

would be capable of performing. (A.R. 93-94). The ALJ found that this constituted a significant

number of jobs. Using Rule 202.21 of the Medical-Vocational Guidelines as a framework, the ALJ

found that plaintiff was not disabled. (A.R. 24-25).

**1.**

Plaintiff relies on evidence that he never presented to the ALJ. (Plf. Brief at 9, 10, 17). This is patently improper. It is clearly established law within the Sixth Circuit that the ALJ's decision is the final decision subject to review by this court in cases where the Appeals Council denies review. This court must base its review of the ALJ's decision on the administrative record presented to the ALJ. The Sixth Circuit has repeatedly held that where, as here, the Appeals Council denies review and the ALJ's decision becomes the Commissioner's decision, the court's review is limited to the evidence presented to the ALJ. *See Jones v. Commissioner*, 336 F.3d at 478; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001); *Cline v. Commissioner*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *see also Osburn v. Apfel*, No. 98-1784, 1999 WL 503528, at * 4 (6th Cir. July 9, 1999) ("Since we may only review the evidence that was available to the ALJ to determine whether substantial evidence supported [his] decision, we cannot consider evidence newly submitted on appeal after a hearing before the ALJ."). The court is not authorized to consider plaintiff's proposed additions to the record in determining whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner correctly applied the law. *See Cline*, 96 F.3d at 148.

The last sentence of plaintiff's brief contains a passing request for alternative relief in the form of remand. (Plf. Brief at 20). His reply brief concludes with an identical request. (Reply Brief at 5, docket # 16). "A district court's authority to remand a case for further administrative proceedings is found in 42 U.S.C. § 405(g)." *Hollon v. Commissioner*, 447 F.3d 477, 482-83 (6th Cir. 2006). The statute permits only two types of remand: a sentence four (post-judgment) remand

made in connection with a judgment affirming, modifying, or reversing the Commissioner's decision; and a sentence six (pre-judgment) remand where the court makes no substantive ruling as to the correctness of the Commissioner's decision. *Hollon*, 447 F.3d at 486 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991)); *see Allen v. Commissioner*, 561 F.3d 646, 653-54 (6th Cir. 2009). The court cannot consider evidence that was not submitted to the ALJ in the sentence four context. It only can consider such evidence in determining whether a sentence-six remand is appropriate. *See Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007); *Foster v. Halter*, 279 F.3d at 357.

Plaintiff has the burden under sentence six of 42 U.S.C. § 405(g) of demonstrating that the evidence he now presents in support of a remand is "new" and "material," and that there is "good cause" for the failure to present this evidence in the prior proceeding. *See Hollon*, 447 F.3d at 483; *see also Ferguson v. Commissioner*, 628 F.3d 269, 276 (6th Cir. 2010). Courts "are not free to dispense with these statutory requirements." *Hollon*, 447 F.3d at 486. Plaintiff has not addressed, much less carried, his burden. *See Ferguson*, 628 F.3d at 276.

The proffered evidence is new because it was generated after the ALJ's decision. *See Ferguson*, 628 F.3d at 276; *Hollon*, 447 F.3d at 483-84.

"Good cause" is not established solely because the new evidence was not generated until after the ALJ's decision. *See Courter v. Commissioner*, 479 F. App'x 713, 725 (6th Cir. 2012). The Sixth Circuit has taken a "harder line." *Oliver v. Secretary of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986). The moving party must explain why the evidence was not obtained earlier and submitted to the ALJ before the ALJ's decision. *See Ferguson*, 628 F.3d at 276. Plaintiff has not addressed, much less carried, his burden of demonstrating good cause.

Finally, in order to establish materiality, plaintiff must show that the introduction of the evidence would have reasonably persuaded the Commissioner to reach a different conclusion. *See Ferguson*, 628 F.3d at 276; *see also Deloge v. Commissioner*, 540 F. App'x 517, 519 (6th Cir. 2013). Plaintiff has not addressed or carried his burden. The evidence that plaintiff filed in support of his unsuccessful application for discretionary review by the Appeals Council would not have persuaded the ALJ to reach a different conclusion on the question of whether plaintiff was disabled during the period at issue, which ended on March 11, 2011. (A.R. 25).

Plaintiff has not demonstrated that remand pursuant to sentence six of 42 U.S.C. § 405(g) is warranted. I recommend that plaintiff's request for a sentence-six remand be denied. Plaintiff's arguments must be evaluated on the record presented to the ALJ.

**2.**

Plaintiff argues that the ALJ committed reversible error "by not properly considering" the opinions of a treating physician: William DuBois, II, M.D. (Plf. Brief at 15-17; Reply Brief at 4). The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). A treating physician's opinion that a patient is disabled is not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(d)(1), (3), 416.927(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician."). Likewise, "no special significance"[2] is attached to

---

[2]"We will not give any special significance to the source of an opinion on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section." 20 C.F.R. §§

treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment because they are administrative issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

    Generally, the medical opinions of treating physicians are given substantial, if not controlling, deference. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). An opinion that is based on the claimant's reporting of his symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

---

404.1527(d)(3), 416.927(d)(3).

-8-

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. §§ 404.1527(c), 416.927(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 661 F.3d 931, 937-38 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart v. Commissioner*, 710 F.3d at 376.

Plaintiff argues that the ALJ failed to provide good reasons for the weight he gave to Dr. DuBois' opinions because "Dr. DuBois was very clear in his . . . extended note explain[ing] why the report of Dr. Lewis (upon which the ALJ relied – see 21) was not accurate."[3] (Plf. Brief at 17). Dr. DuBois was plaintiff's treating family physician. His progress notes indicate that over a number of visits, plaintiff was tender at a number of "trigger points." He offered a primary diagnosis

---

[3]Plaintiff's argument emphasizing the statement that his attorney elicited from Dr. DuBois *after* the ALJ's decision must be disregarded. For the reasons set forth in section 1, *supra*, this court's review is restricted to the evidence that was presented to the ALJ.

of fibromyalgia.[4]  (A.R. 270-73, 384).  During the period at issue, June 1, 2009 through March 11, 2011, plaintiff complained of pain, depression, difficulty sleeping, and problems with stomach upset. In response, Dr. DuBois prescribed Methadone for pain,[5] Cymbalta and Elavil for depression, Restoril for sleep, and Zantac for stomach upset.  (A.R. 391-93).  Plaintiff reported that these medications were working and that he was stable on this regimen.  Dr. DuBois' progress notes did not document any significant side effects from medication.[6]  (A.R. 270-73, 382-86, 391-94).  On June 12, 2009, plaintiff reported an increase in his pain symptoms after "cutting wood." (A.R. 273).

_____

[4]In *Rogers v. Commissioner*, 486 F.3d 234 (6th Cir. 2007), the Sixth Circuit acknowledged the medical difficulty of making a diagnosis of a condition that "present[s] no objectively alarming signs." *Id.* at 243.  "The process of diagnosing fibromyalgia includes (1) the testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions through objective medical and clinical trials. *Id.* at 244.  "The principal symptoms [of fibromyalgia] are 'pain all over,' fatigue, disturbed sleep, stiffness, and -- the only symptom that discriminates between it and other diseases of a rheumatic character --  multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch." *Huffaker v. Metropolitan Life Ins. Co.*, 271 F. App'x 493, 500 n. 2 (6th Cir. 2008); *accord Titles II & XVI: Evaluation of Fibromyalgia*, SSR 12-2p (S.S.A. July 25, 2012) (reprinted at 2012 WL 3104869, at * 3) (effective July 25, 2012).  "[A] diagnosis of fibromyalgia does not automatically entitle [a claimant] to disability benefits...." *Vance v. Commissioner*, 260 F. App'x 801, 806 (6th Cir. 2008); *see Stankowski v. Astrue*, 532 F. App'x 614, 619 (6th Cir. 2013) ("[A] diagnosis of fibromyalgia does not equate to a finding of disability or an entitlement to benefits.").  "'Some people may have a severe case of fibromyalgia as to be totally disabled from working ... but most do not and the question is whether [the claimant] is one of the minority.'" *Vance v. Commissioner*, 260 F. App'x at 806 (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)); *Torres v. Commissioner*, 490 F. App'x 748, 754 (6th Cir. 2012) (same).

[5]In September and October 2009, Dr. DuBois conducted a brief trial of Savella in an attempt to wean plaintiff off Methadone.  The medication was discontinued in November 2009, when plaintiff complained of knee pain and nausea.  (A.R. 270-71, 386).

[6]On August 17, 2009, plaintiff stated that he had "notic[ed] some short term memory loss." Dr. Dubois stated that he was "sure this [was] from his meds" and provided no further explanation. (A.R. 272).

On October 23, 2010, Dr. DuBois noted that plaintiff was applying for disability, and he referred plaintiff to a specialist in physiatry and rehabilitation for a consultative examination. (A.R. 391). The consultative examination performed by Katrina Lewis, M.D., undermined plaintiff's claims for DIB and SSI benefits.

Dr. Lewis conducted her examination on November 3, 2010. She was aware that plaintiff was pursuing claims for social security benefits. (A.R. 402). She recorded plaintiff's subjective complaints. Dr. Lewis noted that plaintiff had been "on opioids almost constantly for [the] past 10 years or more." (A.R. 402). Plaintiff denied sedation from taking Methadone, but reported that he felt hot and tired all the time. (A.R. 402). Plaintiff denied current depression and was independent in his activities of daily living. (*Id.*). Plaintiff's physical examination was unremarkable. He was alert and oriented in all three spheres. His muscle strength was normal and he had no sensory deficits. He had a normal range of motion in all his extremities and his spine. Dr. Lewis found that none of plaintiff's 18 fibromyalgia trigger points returned a positive response. (A.R. 404). Dr. Lewis attributed plaintiff's arthralgias and myalgia to his ongoing use of opioid medication and recommended that he stop taking Methadone and Zantac:

> 1. Arthralgias
> [D]iffuse arthralgias with minimal physical findings. His pain generators appear primarily either muscle or bone, and are almost certainly related to an extent to significant opioid hyperalgesia and testosterone deficiency, given that he has been on chronic opioids for years. Recommendations: 1. LABS uric acid, vitamin D, [etc.] . . . 2. taper off methadone over 6 weeks with supportive clondine 1 mg patch weekly, or tablets, and klonazepam 0.5 mg tid-QIS to ameliorate withdrawal if necessary. Must be off all opioids for at least 6 weeks before the full effects of myalgias and arthralgias will be evident. 3. topamax may be helpful for the myofascial pain as well as headache syndrome (I do not think he has migraines, more tension type headaches). Daily dose can be titrated up to 400 mg a day with appropriate monitoring.

\* \* \*

5. Low back pain
Minimal findings, excellent flexibility. Patient needs to become more active, eat a more vegetarian diet, consider omega 3 fatty acids 3000 mg daily for anti inflammatory properties.

6. Myalgia
Based on review of past and current treatment, physical examination and review of diagnostic studies we feel that this patient has [an] important myofascial pain component, with a clinical picture consistent with opioid associated hyperalgia, has pain presentation without well defined pain generators, etc.

(A.R. 404-05). Dr. Lewis diagnosed plaintiff's foot pain as "possible plantar fasciitis, with no neuropathic features." (A.R. 404). Dr. Lewis stated that there were no specific findings on physical examination to support plaintiff's complaints of knee pain. She indicated that the pain reported was "likely either opioid hyperalgesia or mild OA [osteoarthritis]." (A.R. 405). Dr. Lewis noted the minimal findings on the examination of plaintiff's shoulder and suggested that plaintiff's pending disability appeal was a possible barrier to improvement. (A.R. 405). Dr. Lewis recommended that plaintiff undertake the lifestyle changes of increasing his activity level, increasing the vegetable component of his diet, and smoking cessation. (A.R. 405-06).

On December 9, 2010, plaintiff received an initial evaluation at Michigan Spine and Pain on a referral from Dr. DuBois. The examination was performed by Nurse Practitioner Garria Arnold. (A.R. 408-12). Plaintiff related that he continued to smoke a pack of cigarettes per day. He reported "recreational drug use" of marijuana. (A.R. 409). On examination, "No distinct trigger points [were] noted." (A.R. 411). Mr. Arnold informed plaintiff that the medication policies of Michigan Spine and Pain did not include "medical marijuana" treatment. He recommended that plaintiff increase his exercise level and pursue non-narcotic pain relief. (A.R. 411).

On January 10, 2011, plaintiff returned to Dr. DuBois. (A.R. 414-15). DuBois'

progress notes include a recording of plaintiff's subjective complaints (A.R. 414), a statement that

plaintiff has "at least a partial diagnosis of fibromyalgia and [] multiple other inflammatory joint

difficulties," (A.R. 414), an expansive criticism of the examination conducted by Dr. Lewis and her

conclusions (A.R. 414-15), and ends with a conclusion that plaintiff is disabled:

> A-P: Assessment and Plan. At this pont, we have the chronic pain scenario which is probably multifactorial. We have his panic attacks, anxiety spells and his headaches. He is having more and more stress lately with this situation with his disability that is aggravating his stomach symptoms. He has had a previous history of ulcer. He is getting more panicky. At times he is even unable to leave the house. He has been having more stomach symptoms as well.

> It seem[s] to me that with his situation physically, emotionally, and with his mental capacities that he is disabled and unable to handle a regular job. He certainly would not be able to interact with the public. If he was monitoring a security camera and he saw something wrong he would have a panic attack and he would not be able to respond appropriately to the event. He is unreliable in terms of reading, writing and mathematics as well. Any exposure to the public is going to resolve in panic attacks and migraines. Any physical type labor is impossible because of his multiple musculoskeletal issues. Unfortunately we do not have a whole lot to offer him in terms of fixing his problems. It is going to be a matter of treating him with pain medication injections, anti-inflammatories, anti-depressants, anti-anxiety medicines and etc. He is never going to improve and become employable.

(A.R. 415).

The ALJ found that the extreme restrictions suggested by Dr. DuBois were entitled

to little weight. Among other things, the ALJ noted that the issue of disability is reserved to the

Commissioner and that the restrictions suggested by Dr. DuBois were inconsistent with the medical

evidence and the record as a whole, particularly the statements made by plaintiff and his treating

physician indicating that medications were effective in controlling plaintiff's symptoms:

> Dr. DuBois, the claimant's treating physician, stated in January 2011, that he felt the claimant was disabled and incapable of handling a regular job. Dr. DuBois also noted that the claimant would not be able to interact with the public, and that he is unreliable in terms

of reading, writing, and mathematics. Dr. DuBois further stated that "any physical type of labor is impossible because of the multiple musculoskeletal issues" and "he is never going to improve and become employable." (Ex. 16F/3). The undersigned gives little weight to this opinion, as it is not supported by medical evidence and the record as a whole. Specifically, Dr. DuBois' own records do not describe in detail the examination findings relied upon in diagnosing the claimant. Moreover, the examination findings of Dr. Lewis and Ms. Arnold contradict Dr. DuBois' diagnosis of fibromyalgia. (Ex. 15F/2-6). Additionally, Dr. DuBois' records suggest that the claimant's medications have been effective in controlling his physical symptoms (See, e.g. Ex. 2F/5, 9, 12, 14, 16, 18; 10F/4; 12F/4). Furthermore, Dr. DuBois stated that the claimant was "disabled" and could not "become employable." Such statements are not medical opinions but are administrative findings dispositive of a case, requiring familiarity with the Regulations and legal standards set forth therein. Such issues are reserved to the Commissioner, who cannot abdicate the statutory responsibility to determine the ultimate issue of disability. Opinions on issues reserved to the Commissioner can never be entitled to controlling weight, but must be carefully considered to determine the extent to which they are supported by the record as a whole or contradicted by other persuasive evidence.

(A.R. 21-22).

The ALJ correctly applied the law and gave good reasons for the weight given to Dr. DuBois' opinions. Dr. DuBois' extreme restrictions were not well supported and were contradicted by the findings of a specialist. The resolution of such conflicts in the evidence, if reasonable, is the prerogative of the ALJ.

**3.**

Plaintiff argues that the ALJ committed error when he rejected opinions provided by Psychologist Sue Fowler, the consultative examiner hired by plaintiff's attorney. (Plf. Brief at 17). There is "nothing fundamentally wrong with a lawyer sending a client to a doctor." *Blankenship v. Bowen,* 874 F.2d 1116, 1122 n. 8 (6th Cir. 1989) (*per curiam*). Courts have recognized that the results of a consultative examination should not be rejected "solely" because it was arranged and paid for by the plaintiff's attorney. *See Hinton v. Massanari*, 13 F. App'x 819, 824 (10th Cir. 2001) ("An ALJ may certainly question a doctor's credibility when the opinion, as here, was solicited by

counsel. ... The ALJ may not automatically reject the opinion for that reason alone, however."). Some courts have criticized ALJs for referring to opinions like Fowlers as "purchased opinions," but such statements do not provide a basis for overturning an ALJ's decision. *See, e.g.*, *Mason ex rel. Mason v. Astrue*, No. 10-621-M, 2011 WL 2670005, at *6 (S.D. Ala. July 6, 2011); *Milan v. Commissioner*, No. 09-1065, 2010 WL 1372421, at *10 n. 3 (D.N.J. Mar. 31, 2010). Here, the ALJ did not reject Psychologist Fowler's opinions "solely" or even primarily on the basis that her one-time examination occurred on a referral from plaintiff's counsel. It was entirely appropriate for the ALJ to note that Fowler had examined plaintiff on a referral from plaintiff's attorney and that the purpose of the examination was to generate evidence in support of plaintiff's claims for DIB and SSI benefits. *See DeVoll v. Commissioner*, No. 99-1450, 2000 WL 1529803, at *1 (6th Cir. Oct. 6, 2000); *Pentecost v. Secretary of Health & Human Servs.*, No. 89-5014, 1989 WL 96521, at *1 (6th Cir. Aug.22, 1989); *see also Gilmore v. Astrue*, No. 2:10-54, 2011 WL 2682990, at *8 (M.D. Tenn. July 11, 2011). Psychologist Fowler saw plaintiff on one occasion. (A.R. 387-89). The opinions of a consultative examiner are not entitled to any particular weight. *See Peterson v. Commissioner*, No. 13-5841, __ F. App'x __, 2014 WL 223655, at * 6 (6th Cir. Jan. 21, 2014); *Norris v. Commissioner*, 461 F. App'x 433, 439 (6th Cir. 2012). The ALJ is responsible for weighing psychological opinions. *See Buxton*, 246 F.3d at 775; *see also Reynolds v. Commissioner*, 424 F. App'x 411, 414 (6th Cir. 2011) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ."); *accord White v. Commissioner*, 572 F.3d 272, 284 (6th Cir. 2009). The ALJ found that the extreme restrictions suggested by Psychologist Fowler were inconsistent with the record as a whole, particularly plaintiff's ability to perform independent activities of daily living.

(A.R. 20-22).  The ALJ's decision to give little weight to Psychologist Fowler's opinions is well-supported and entirely consistent with applicable law.

## 4.

Plaintiff argues that the ALJ committed reversible error when he found that plaintiff did not meet the requirements of listing 12.05(C).  (Plf. Brief at 17-18; Reply Brief at 1-3).  Listed impairments are impairments that are so severe that they render entitlement to benefits a "foregone conclusion." *Combs v. Commissioner*, 459 F.3d 640, 649 (6th Cir. 2006)(*en banc*).  "In other words, a claimant who meets the requirements of a listed impairment will be deemed conclusively disabled." *Rabbers v. Commissioner*, 582 F.3d 647, 653 (6th Cir. 2009)  It is well established that a claimant must show that he satisfies all the individual requirements of a listing.  *See Elam*, 348 F.3d at 125.  "If all the requirements of the listing are not present, the claimant does not satisfy that listing." *Berry v. Commissioner*, 34 F. App'x 202, 203 (6th Cir. 2002); *see Ritchie v. Commissioner*, 540 F. App'x 508, 511 (6th Cir. 2013).  "It is insufficient that a claimant comes close to satisfying the requirements of a listed impairment." *Elam*, 348 F.3d at 125.

"Listing 12.05 describes circumstances in which mental retardation[7] is severe enough to preclude gainful activity." *Turner v. Commissioner*, 381 F. App'x 488, 491 (6th Cir. 2010).  "The

---

[7]In 2013, a revised version of the listing 12.05 went into effect which replaced the term "mental retardation" with "intellectual disability." *Peterson v. Commissioner*, No. 13-5841, __ F. App'x __, 2014 WL 223655, at * 2 n.1 (6th Cir. Jan. 21, 2014).  The substantive components of the listing remained unchanged. *See Hickel v. Commissioner*, 539 F. App'x 980, 982 n.1 (11th Cir. Oct. 28, 2013).  The terms "mental retardation" and "intellectual disability" can be used interchangeably because they refer to the same disorder. *See Talavera v. Astrue*, 697 F.3d 145, 148 n.2 (2d Cir. 2012); *Willliams v. Colvin*, No. 5:12-cv-676, 2013 WL 6058204, at * 4 n.3 (E.D.N.C. Nov. 15, 2013).  However, for the sake of clarity, courts generally use the old terminology when conducting appellate review of administrative decisions made before the terminology was revised. *See Peterson*, 2014 WL 223655, at * 2 n.1; *Hickel*, 539 F. App'x at 982 n.1.

structure of listing for mental retardation is different from that of the other mental disorders listings.

Listing 12.05 contains an introductory paragraph with the diagnostic description for mental

retardation. It also contains four sets of criteria (paragraphs A through D)." 20 C.F.R. Pt. 404,

Subpt. P, App. 1, § 12.00(A). "[A] claimant will meet the listing for mental retardation only if the

claimant's impairment satisfies the diagnostic description in the introductory paragraph *and* any one

of the four sets of criteria." *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); *see* 20 C.F.R. Pt.

404, Subpt. P, App. 1, § 12.00(A); *see also Cheatum v. Astrue*, 388 F. App'x 574, 576 (8th Cir.

2010); *Randall v. Astrue*, 570 F.3d 651, 659-60 (5th Cir. 2009).

The specific requirements of listing 12.05 are as follows:

12.05  Mental Retardation: Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
    The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
A.  Mental incapacity as evidenced by dependence on others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
OR
B.  A valid verbal, performance, or full scale IQ of 59 or less;
OR
C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
OR
D.  A valid verbal, performance or full scale IQ of 60 though 70, resulting in at least two of the following:
    1.  Marked restriction of activities of daily living; or
    2.  Marked difficulties in maintaining social functioning; or
    3.  Marked difficulties in maintaining concentration, persistence, or pace; or
    4.  Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.  The ALJ found that plaintiff did not meet or equal the requirements of any listed impairment.  (A.R. 17-19).  He found that plaintiff did not meet any of the severity requirements of listing 12.05:

> The requirements in paragraph A are met when there is a mental incapacity evidenced by dependence on others for personal needs (e.g. toileting, eating, dressing and bathing) and inability to follow directions, such that use of standardized measures of intellectual functioning is precluded.  In this case, these requirements are not met because the claimant has noted caring for a wide range of his personal needs, including driving, taking his medications, caring for his own personal hygiene, preparing meals, performing household chores, and doing yardwork (Ex. 6E; 5F/3).

> Turning to the requirements in paragraph B, they are not met because plaintiff does not have a valid verbal, performance, or full scale IQ of 59 or less.

> In terms of the requirements of paragraph C, they are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

> Finally, the requirements of paragraph D are met if the claimant has a valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration.  A marked limitation means more than moderate but less than extreme.  Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting at least 2 weeks.

> In activities of daily living, the claimant has mild restriction.  The claimant asserted that he leads a limited lifestyle, but also described engaging in an array of daily activities.  These activities include driving, helping his wife with her dog boarding and grooming business, grocery shopping, preparing meals, feeding family pets, walking family pets, caring for his own personal hygiene, doing laundry, vacuuming, mowing the lawn with a riding lawnmower, raking leaves, cutting wood, shoveling snow, hunting, fishing, and watching television (Ex 6E; 2F/4, 8, 11; 5F/3).

> In social functioning, the claimant has moderate difficulties.  The claimant testified that he panics when he is around other people.  However, he has also noted participating in a number of social activities, including spending time with his wife and children, visiting his parents, seeing a neighborhood friend twice per week, speaking with a school friend on the phone, and going on a hunting trip to Colorado (Ex. 6E; 2F/10; 5F/3).

-18-

With regard to concentration, persistence or pace, the claimant has mild difficulties. The claimant alleged that his symptoms limit his ability to concentrate, understand, and complete tasks, but he has also described engaging in a number of activities that require a fair degree of concentration, persistence , and pace (Ex. 6E/6). These activities include driving, helping his wife with her dog boarding and grooming business, doing housework, mowing the lawn with a riding lawnmower, hunting, fishing, and watching television. (Ex. 6E; 2F/11; 5F/3).

As for episodes of decompensation, the claimant has experienced no episodes of decompensation of extended duration.

Accordingly, the requirements of paragraph D are not satisfied.

(A.R. 18-19).

Plaintiff disagrees with the ALJ's factual finding and argues that the ALJ should have found that he was disabled under listing 12.05(C). Plaintiff relies on a low verbal IQ score that he achieved during the consultative examination performed by Psychologist Fowler. (A.R. 388). The ALJ found that this IQ score was not a valid indicator of plaintiff's level of intellectual functioning:

In October 2010, licensed psychologist Sue Fowler, Psy.D., evaluated the claimant's mental functioning. As part of this evaluation, the claimant recorded a Verbal IQ of 70, a Performance IQ of 79, and a Full Scale IQ of 72 on the Wechsler Adult Intelligence Scale test ("WAIS-III"). After stressing that the claimant did not have a reading disability, Ms. Fowler diagnosed the claimant with borderline intellectual functioning and borderline/mild mentally retarded verbal intelligence (Ex. 11F). The undersigned notes that, although this testing does suggest borderline intellectual functioning, the claimant's activities of daily living and level of functioning contradict these test results. For example, the record shows that the claimant drives, helps his wife with her dog boarding and grooming business, cares for family pets, takes his medications, does housework, prepares meals, cares for his own personal hygiene, hunts, and goes fishing (Ex 6E; 2F/10-11). Moreover, the claimant obtained his GED and held several jobs prior to his amended alleged onset date. (See e.g., Ex. 4D; 15E).

(A.R. 20). The ALJ is responsible for making factual findings regarding the validity of IQ scores, not the court. *See Baker v. Commissioner*, 21 F. App'x 313, 315 (6th Cir. 2001) (citing *Clark v. Apfel*, 141 F.3d 1253, 1255 (8th Cir. 1998)); *see also Hancock v. Astrue*, 667 F.3d 470, 474 (4th Cir. 2012) (collecting cases); *Lax v. Astrue*, 489 F.3d 1080, 1087 (10th Cir. 2007) (same). The only IQ

test scores submitted were from October 2010. There were no other IQ test results suggesting mental retardation or even borderline intellectual functioning.[8]  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Heston v. Commissioner*, 245 F.3d at 534.  The ALJ's finding that plaintiff's work history, GED, and extensive daily activities undermined the validity of his low verbal IQ score in October 2010 is supported by more than substantial evidence.  The ALJ's finding that plaintiff did not meet or equal the requirements of any listed impairment, including listing 12.05(C), is supported by more than substantial evidence.

**5.**

Plaintiff argues that the ALJ committed error when he failed to find that plaintiff's dysthymia was a severe impairment.  (Plf. Brief at 18).  The finding of a severe impairment at step 2 is a threshold determination.  The finding of a single severe impairment is enough and requires continuation of the sequential analysis.  *See Maziarz v. Secretary of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).  The ALJ found at step 2 of the sequential analysis that plaintiff had severe impairments.  (A.R. 16).  The ALJ's failure to find additional severe impairments at step 2 is "legally irrelevant."  *McGlothin v. Commissioner*, 299 F. App'x 516, 522 (6th Cir. 2009); *see Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008).  The ALJ continued the sequential analysis and considered all plaintiff's severe and non-severe impairments in making his factual finding regarding plaintiff's RFC.  (A.R. 15, 19-23).

---

[8]Borderline intellectual functioning is a "lesser diagnosis than mental retardation."  *Sheeks v. Commissioner*, 544 F. App'x 639, 641 (6th Cir. Nov. 2013).

**6.**

Plaintiff argues that the ALJ committed reversible error in failing to follow the vocational expert's answers to accurate hypothetical questions. (Plf. Brief at 15, 18-19). Specifically, he argues that "the vocational expert testified that there were either no jobs or clearly an insufficient number of jobs available to Plaintiff under the accurate hypothetical question that was asked of him by Plaintiff's attorney." (*Id.* at 18). This argument does not provide a basis for disturbing the Commissioner's decision. Plaintiff's attorney's hypothetical questions gave full credibility to his client's testimony and assumed a RFC more restrictive than the one determined by the ALJ. RFC is an administrative finding of fact made by the ALJ. 20 C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(2), (3). RFC is the most, not the least, a claimant can do despite his impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see Branon v. Commissioner*, 539 F. App'x 675, 677 n.3 (6th Cir. 2013); *Griffeth v. Commissioner*, 217 F. App'x 425, 429 (6th Cir. 2007). Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The ALJ's factual findings regarding plaintiff's RFC and the credibility of his testimony are supported by more than substantial evidence. (A.R. 19-23). The ALJ was not bound to accept the VE's testimony in response to the attorney's hypothetical questions, which incorporated more significant functional restrictions than those found by the ALJ. *See Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *see also Gant v. Commissioner*, 372 F. App'x 582, 585 (6th Cir. 2010).

## Recommended Disposition

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated: April 1, 2014            /s/ Joseph G. Scoville
                                      United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).